```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JONATHAN CORBETT,                                    :
                                                     :
                              Plaintiff,             :
                                                     :
               -v -                                  :
                                                     :
THE CITY OF NEW YORK, et al.,                        :
                                                     :
                              Defendants.            :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/22/16

1:15-cv-09214-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

The City of New York (the "City") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss *pro se* plaintiff Jonathan Corbett's claims for federal municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). For the reasons that follow, the City's motion to dismiss is GRANTED, and Plaintiff's *Monell* claims are dismissed.[1] The City's motion to bifurcate *Monell* discovery is DENIED as moot.

I. BACKGROUND[2]

A. Facts Alleged

At 4:02 a.m. on February 7, 2015, Mr. Corbett was on the phone with his girlfriend when she took her own life. ECF No. 65, Second Am. Compl. ("SAC"), ¶ 16. Unsure of exactly what he had heard on the phone, Mr. Corbett traveled to his girlfriend's apartment on West 33rd Street in Manhattan, where he found her unresponsive and called 911. *Id.* ¶¶ 17-18. Within fifteen minutes, at least eight officers of the New York City Police Department (the "NYPD") had arrived on the scene. *Id.* ¶ 19. When officers first arrived, Mr. Corbett told them where to locate his girlfriend's

---

[1] Separate and apart from the claims for federal municipal liability, the Second Amended Complaint asserts a *state law* claim against the City for *respondeat superior* liability. AC ¶¶ 113-117. The City has not moved to dismiss that claim, and it is not addressed or disposed of in this opinion and order.

[2] Unless otherwise noted, the facts are taken from the Second Amended Complaint, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

body. *Id.* ¶¶ 19, 20.  He voluntarily spoke with several officers about the incident, and at approximately 4:50 a.m., Sergeant Roberto More directed another officer to "take [Corbett] back to the precinct." *Id.* ¶ 21-22.  Either More or another nearby officer then told Mr. Corbett "something to the effect of, 'Hold tight, this is going to be a long night for you.'" *Id.* ¶ 23.  It was at this point, Mr. Corbett alleges, that it became clear he was "no longer free to go." *Id.* ¶ 24.  He was then directed into a squad car and transported to the Midtown South Precinct without his consent. *Id.* ¶¶ 25, 30.

Upon arrival at the precinct, the transporting officer directed Mr. Corbett into a room, where he waited "under armed guard" by that officer for approximately two hours before Sergeant Bryan Gillis and Detective Michael Aherne arrived. *Id.* ¶ 32, 36, 38, 40.  Sergeant Gillis and Detective Aherne proceeded to question him for approximately thirty minutes before informing him that he was "free to go" at approximately 7:20 a.m. *Id.* ¶ 43-44.  In total, Mr. Corbett was detained for approximately two and one-half hours without his consent. *Id.* ¶ 46.  He alleges that none of the officers had probable cause or even reasonable suspicion that he had committed any wrongdoing at any time during this encounter. *Id.* ¶¶ 50-51.  According to Mr. Corbett, the Office of the Chief Medical Examiner subsequently ruled his girlfriend's death a suicide, and the NYPD closed the case without bringing any charges. *Id.* ¶ 53.

### B.  Procedural History

On November 23, 2015, Mr. Corbett filed this lawsuit *pro se* against four "John Doe" officers and the City.  ECF No. 1.  On November 30, 2015, the Court issued a *Valentin* Order directing the City to ascertain the identities of the four "John Doe" officers named in the complaint.  ECF No. 3. Although the City was able to identify three of the named officers as Sergeant More, Sergeant Gillis, and Detective Aherne, the City was unable to identify the officer who allegedly transported Mr. Corbett to the precinct and guarded him while he waited to be questioned.  ECF No. 19.  Mr. Corbett amended his complaint on March 29, 2016 to name the three identified officers.  ECF No.

22.  In his first amended complaint, Mr. Corbett brought claims under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment and for municipal liability against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as well as various state law claims.  *Id.*  On April 19, 2016, the City moved to dismiss Mr. Corbett's *Monell* claims and to bifurcate, or in the alternative stay, discovery on those claims.  ECF Nos. 26-29.  On July 12, 2016, the Court granted a stay of *Monell* discovery pending decision on the City's motion.  ECF No. 50.  Discovery proceeded on the remaining claims.

On October 7, 2016, before a decision was issued on the City's fully briefed motion to dismiss, Mr. Corbett moved for leave to file a second amended complaint.  ECF No. 62.  In his motion, Mr. Corbett explained that, in light of depositions he had taken of the individual defendants, he wished to "simplify his municipal law claim '[p]redicated on "Pattern or Practice" of Failing to Train, Supervise, Screen, or Discipline' to a claim simply alleging failure to train its officers regarding how to avoid unlawfully detaining someone."  *Id.* at 2 (alterations in original).  The Court granted Mr. Corbett leave to do so on October 19, 2016, ECF No. 64, and he filed his second amended complaint on the same day.  ECF No. 65.

In his second amended complaint, Corbett again brings claims under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment as well as various state law claims.  *Id.*  He also brings his amended *Monell* claims.  On November 2, 2016, the City again moved to dismiss Corbett's *Monell* claims and to bifurcate, or in the alternative stay, discovery on those claims.  ECF Nos. 69-72.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because he is proceeding *pro se*, the Court must liberally construe Mr. Corbett's allegations and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ."). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements. *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

**III.    DISCUSSION**

A municipality is not vicariously liable for its employees' actions under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 691). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Count 1 of Mr. Corbett's Second Amended Complaint falls into the final category. He alleges that the NYPD "fail[ed] to train its officers as to what constitutes a detention, and/or to train its officers to advise individuals that they are free to go when failing to do so would lead a reasonable person to believe that they have been detained." SAC ¶ 71. In Count 2, Mr. Corbett seeks to proceed on a theory he describes as "[m]unicipal [l]iability [p]redicated on [n]egligent [o]bstruction of [j]ustice" arising from the City's failure to identify the fourth "John Doe" officer named in his initial complaint. SAC ¶¶ 76-83. For purposes of this motion only, the Court will assume that the individual NYPD Defendants violated Mr. Corbett's constitutional rights by

detaining him without an adequate justification—but even with that assumption, Mr. Corbett's *Monell* claims fail because he has not pleaded facts that plausibly allege that those violations were caused by an official policy or custom.

### A. Count 1: Failure to Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order for municipal liability to attach under Section 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton*, 489 U.S. at 388). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409). In a "narrow range of circumstances," however, "a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations" where "a violation of federal rights [is] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cty.*, 520 U.S. at 409; *see also id.* ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right."). As Mr. Corbett concedes, he does not allege a pattern of similar constitutional

violations. *See* ECF No. 76, Pl.'s Opp'n Br. at 9. Rather, he contends that the need for training was so obvious that the failure to conduct such training amounts to deliberate indifference. *See id.*

Mr. Corbett's failure-to-train claim fails at the gate because he does not plausibly allege a training deficiency. As noted above, when a plaintiff pleads a *Monell* claim based upon a failure-to-train theory, that claim can succeed only if the alleged training deficiency amounts to a "policy." *City of Canton*, 489 U.S. at 389. And "[t]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Since the Supreme Court's decisions in *Twombly* and *Iqbal*, courts in this Circuit have required something more than a mere conclusory allegation that a municipality failed to train its officers. *See, e.g.*, *Smith v. Collins*, No. 15-cv-216 (PAE), 2016 WL 817473, at *2 (S.D.N.Y. Feb. 26, 2016) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery . . . this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (quoting *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012))); *see also Scalpi v. Town of E. Fishkill*, No. 14-cv-2126 (KMK), 2016 WL 858955, at *7 (S.D.N.Y. Feb. 29, 2016) (same); *Stoeckley v. Cty. of Nassau*, No. 15-cv-514 (LDW), 2015 WL 8484431, at *2 (E.D.N.Y. Dec. 9, 2015) (same); *Gonzalez v. City of New York*, No. 14-cv-7721 (LGS), 2015 WL 6873451, at *10 (S.D.N.Y. Nov. 9, 2015) (same); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ("[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."); *cf. Willey v. J.P. Morgan Chase, N.A.*, No. 09-cv-1397 (CM), 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009) (stating that *Iqbal* "unequivocally rejects the notion that conclusory statements unsupported by factual allegations can subject a defendant to the burdens of discovery").

Here, Mr. Corbett's allegations that the NYPD failed to conduct adequate training are purely conclusory. For example, he alleges that "[t]he NYPD does not train its officers that in the

7

described situation, whereby an individual may quite reasonably believe that he is not free to go, that they should advise the individual of his right to leave to avoid violating an individual's rights." SAC ¶ 37. Similarly, he alleges that the NYPD "fail[ed] to train its officers as to what constitutes a detention, and/or to train its officers to advise individuals that they are free to go when failing to do so would lead a reasonable person to believe that they have been detained." SAC ¶ 71. Finally, in something of a diversion from the focus of his failure-to-train claim, Corbett alleges that the NYPD "fail[ed] to have a policy to indicate to the receiving officer upon transfer of the civilian from one officer to another, whether or not the person has voluntarily consented to be present." SAC ¶ 72. On their own, these allegations fail to satisfy the plausibility standard set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Miller v. Cty. of Monroe*, No. 11-cv-6219 (CJS), 2013 WL 2180738, at *8 (W.D.N.Y. May 17, 2013) (holding that allegation that county "had not properly trained [officers] to deal appropriately with emotionally distraught citizens who do not threaten harm to others" contained "no factual allegations sufficient to raise a right to relief above the speculative level."); *Simms v. City of New York*, No. 10-cv-3420 (NGG), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011), *aff'd*, 480 F. App'x 627 (2d Cir. 2012) (holding that allegation that city "fail[ed] to properly train, supervise or discipline its police officers concerning the correct practices in conducting investigations . . . and [the] obligation to effect an arrest only when probable cause exists for such arrest" was "conclusory, and therefore must be disregarded").

Mr. Corbett attempts to support his conclusory assertions with testimony from depositions of the individual officer-defendants in this case. Generally, on a motion to dismiss, the Court may not look beyond "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016) (alterations in original). Mr. Corbett contends that the Court may consider the cited deposition testimony because the Court may take judicial

8

notice of it as a "matter of public record." Pl.'s Opp'n Br. at 4. It is true that courts may take judicial notice of public records. *See Glob. Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). It is also true that Mr. Corbett has filed the transcripts on the public docket for the case in connection with his opposition brief. ECF No. 76. That is not enough, however.

The Federal Rules of Evidence permit courts to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because at this stage of the case, Defendants have not yet had an opportunity to present contrary evidence, the Court concludes that this testimony is "subject to reasonable dispute." *Cf.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (explaining that "caution must be used in determining that a fact is beyond controversy under Rule 201(b)"); *Shafir v. Continuum Health Partners, Inc.*, 57 F. Supp. 3d 325, 326-27 (S.D.N.Y. 2014) (converting 12(b)(6) motion to one for summary judgment in part because deposition was a matter "outside the pleadings"). Accordingly, the Court concludes that it cannot consider the cited deposition testimony without converting this motion to one for summary judgment, which the Court declines to do. *See, e.g.*, *Abbey v. 3F Therapeutics, Inc.*, No. 06-cv-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment.").[3]

---

[3] As an aside, the Court observes that none of the cited testimony establishes, or gives rise to a plausible inference that, the NYPD failed to train its officers in the ways Mr. Corbett suggests. For example, Mr. Corbett cites the following exchange with Defendant More: "Q. Do you have any training that relates to your response to call for a dead body found? A. Yes. Q. Can you describe that training? A. Securing the crime scene. That's pretty much it." Pl.'s Opp'n Br. at 7 (citing Ex. 1, at 5:10-15). He also points to the following exchange with Defendant Aherne: "Q. When's the last time you had any training that would relate to what to do at the scene that you encountered in the morning of February 7, 2015? . . . A. Honestly, I don't remember offhand. Q. Okay. It may have been years? A. Could be." *Id.* at 8 (citing Ex. 2, at 8:4-11). In neither set of questions were the officers asked whether they had received training on what constitutes a detention, or on how to determine whether a citizen is present by consent, or on when and how to inform a citizen that she is free to leave. The lack of a description of such training in response to the questions posed does not establish that such training is lacking.

Because the Court cannot consider this testimony, the Court is left only with Mr. Corbett's conclusory allegations and the events of February 7, 2015 themselves. Corbett cannot sustain his failure-to-train claim armed with nothing more than that. The Court will not infer a deficiency in training by speculation based upon a single alleged constitutional violation. *See Miller v. Cty. of Monroe*, No. 11-cv-6219 (CJS), 2013 WL 2180738, at *8 (W.D.N.Y. May 17, 2013) ("[T]he case law from the Second Circuit makes it clear that Plaintiff must allege more than the conclusion that since Miller was killed, the County defendants must have failed to properly train the sheriff's deputy involved, or that they had a policy or practice in place that led to Miller's unconstitutional death at the hand of deputy sheriffs."). Not only is such an inference unwarranted here, but to draw such an inference based upon a single allegedly unconstitutional act would be to entertain a claim that falls uncomfortably close to municipal vicarious liability, which is not cognizable under § 1983. *Connick*, 563 U.S. at 60; *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (citing *Monell*, 436 U.S. at 694)); *see also Amnesty Am. v Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) ("The elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability.").

Finally, the Court notes that the primary training deficiency that Mr. Corbett alleges—namely, that the NYPD failed "to train its officers to advise individuals that they are free to go when failing to do so would lead a reasonable person to believe that they have been detained," SAC ¶ 71—bears a logical relationship to an unlawful arrest only where an officer does not actually intend to confine an individual, but that individual nonetheless reasonably believes he is confined.[4] That is

---

[4] Indeed, it is unclear that a *Monell* claim premised on this particular training deficiency is consistent with Mr. Corbett's individual false arrest claim, since intent to confine is a required element of a false arrest claim under § 1983. *See*

10

a narrow set of circumstances.  As a result, it is even less plausible that the City would have sufficient notice to constitute deliberate indifference absent a pattern of factually similar incidents. *See City of Canton*, 489 U.S. at 395 ("Without some form of notice to the city, and the opportunity to conform to constitutional dictates both what it does and what it chooses not to do, the failure to train theory of liability could completely engulf *Monell*, imposing liability without regard to fault.").

Because Mr. Corbett's failure-to-train claim fails to "raise a right to relief above the speculative level," it must be dismissed.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 98 (quoting *Twombly*, 550 U.S. at 544).

### B.  Count 2

In Count 2 of the Second Amended Complaint, Mr. Corbett asks the Court to extend the law of municipal liability under Section 1983 to recognize a claim for "negligent obstruction of justice."  SAC ¶¶ 76-83 & n.5.  The Court cannot do so for several reasons.  *Monell* sets forth the exclusive theory under which an individual may sue a municipality for a violation of federal constitutional rights under color of state law:  "[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable *unless action pursuant to official municipal policy of some nature caused a constitutional tort*." 436 U.S. at 691 (emphasis added)).  As an initial matter, Corbett's allegations do not state a claim within the scope of *Monell* because he neither alleges a "policy" nor that the official action at issue caused a constitutional tort.

Mr. Corbett alleges that the City, despite being given ample time and having been instructed to do so by this Court, has "been unable, and do not expect to be able, to identify" the officer who allegedly transported him to the precinct and guarded him while he waited to be questioned.  SAC ¶¶ 76-78.  He further alleges the legal conclusion that the City "has a duty to keep basic records about the whereabouts of its officers, as well as record whenever an officer detains an individual and

---

*Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012).

transports him to a police precinct" and that the City "either failed to keep such records, lost the records, or is intentionally withholding the records from [Corbett] and the Court." *Id.* ¶¶ 79-80. This, he alleges, allowed the unidentified officer, and in turn the City, to "escape liability." *Id.* ¶ 82.

Mr. Corbett alleges only a single instance of a failure to identify an officer, and he makes no attempt to establish a pattern or practice of such failures. Furthermore, he alleges not that the failure to identify the officer caused a violation of his constitutional rights, *i.e.*, his false arrest, but that it impeded his ability to file a lawsuit against that officer.

To the extent that Mr. Corbett asks the Court to infer a new cause of action under Section 1983 that ventures beyond the limitations set forth in *Monell*, the Court declines to do so.

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (internal quotation marks and citations omitted). The Supreme Court has already interpreted Congress's intent with respect to Section 1983. It did so in *Monell*, where it concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. This Court will not venture, and cannot venture, beyond that interpretation.

Because Count 2 of Corbett's Amended Complaint is precluded by *Monell*, that claim is dismissed with prejudice.

### C. Leave to Amend

Although Corbett has already twice amended his complaint, in this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely

give leave [to amend] when justice so requires."). Moreover, "leave to replead should be liberally granted to *pro se* litigants." *Vallen v. Plan*, No. 15-CV-0703 (JS), 2016 WL 482026, at *4 (E.D.N.Y. Feb. 4, 2016) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Accordingly, the Court will allow Plaintiff to file a third amended complaint to the extent he can cure any of the defects in his second amended complaint with respect to his failure-to-train claim. Any further amendment must be made no later than thirty days after the date of this order.

### IV. THE CITY'S DISCOVERY MOTIONS

In addition to its motion to dismiss, the City moved to bifurcate *Monell* discovery or, in the alternative, to stay *Monell* discovery pending the outcome of this motion to dismiss. The Court has already granted such a stay. ECF No. 50. Because the Court is now dismissing Corbett's *Monell* claims, the City's motion to bifurcate is denied as moot.

### V. CONCLUSION

For the foregoing reasons, the City's partial motion to dismiss the Second Amended Complaint is GRANTED. Count 1 of Plaintiff's Second Amended Complaint is dismissed without prejudice, with leave to amend within thirty days. Count 2 of Plaintiff's Second Amended Complaint is dismissed with prejudice. Defendants' motion to bifurcate *Monell* discovery is DENIED as moot. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 69.

SO ORDERED.

Dated: December 22, 2016
New York, New York

GREGORY H. WOODS
United States District Judge